UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ALEXANDRA WAHLFELD,<br><br>      Petitioner,<br> v.<br><br>WILLIAM WAHLFELD,<br><br>      Respondent. | CASE NO. 2:24-cv-01899-LK<br><br>ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER |

   This matter comes before the Court on Petitioner Alexandra Wahlfeld's Motion for a Temporary Restraining Order. Dkt. No. 51. Ms. Wahlfeld filed this matter under the Hague Convention on the Civil Aspects of International Child Abduction (the "Convention")[1] and the United States' implementing statutes. Dkt. Nos. 1, 28 (complaint and petition). Ms. Wahlfeld seeks a temporary restraining order "(1) requiring Respondent William Wahlfeld . . . to surrender the parties' minor child ('J.W.')'s passports and birth certificates to the Clerk of the Court;

---

[1] Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, T.I.A.S. No. 11670, 1343 U.N.T.S. 89 (effective July 1, 1988). *See also* the International Child Abduction Remedies Act, 22 U.S.C. §§ 9001–9011 ("ICARA").

ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER - 1

1  (2) prohibiting [Mr. Wahlfeld] from removing J.W. from the jurisdiction of the Court until this
2  action is resolved, and (3) restricting [Mr. Wahlfeld] from communicating with [Ms. Wahlfeld]
3  except through counsel." Dkt. No. 51 at 1. The Court ordered Mr. Wahlfeld, who is proceeding
4  pro se, to respond to the motion and specifically state "whether he agrees to each part of the relief
5  Ms. Wahlfeld requests in that motion." Dkt. No. 54. Mr. Wahlfeld responded and requested that
6  the Court deny the motion. Dkt. No. 56 at 1. In addition, on January 22, 2025, Mr. Wahlfeld
7  provided to the Clerk of the Court JW's passports and birth certificates, so that aspect of Ms.
8  Wahlfeld's requested relief is now moot. Dkt. No. 62 at 2.

9       JW was born in Germany in 2019 and holds dual German and United States citizenship.
10  Dkt. No. 28 at 3. The parties subsequently separated, and a court in Germany entered the parties'
11  settlement agreement, which provided that JW would live with Ms. Wahlfeld and Mr. Wahlfeld
12  would have limited visitation. *Id.* at 4; Dkt. No. 52 at 16–17. Under German law, the parties have
13  joint custody of JW. Dkt. No. 28 at 12.

14       In December 2023, Ms. Wahlfeld traveled to the United States with JW to complete her
15  studies, after which she planned to return to Germany with JW in June 2024. *Id.* at 7. In March
16  2024, Mr. Wahlfeld alleged that Ms. Wahlfeld assaulted him, and as a result a no contact order
17  was issued. *Id.* at 8–9. Mr. Wahlfeld obtained a temporary domestic violence protection order
18  against Ms. Wahlfeld from the King County Superior Court on March 29, 2024. *Id.* at 9. The order
19  granted Mr. Wahlfeld temporary custody of JW, precluded Ms. Wahlfeld from contacting Mr.
20  Wahlfeld or JW, precluded Ms. Wahlfeld from leaving the state with JW, and set a full hearing for
21  April 2024. Dkt. No. 56-1 at 1, 4, 6–7. Ms. Wahlfeld had no contact with JW for seven weeks.
22  Dkt. No. 28 at 9. On April 26, 2024, the King County Superior Court issued an order granting Mr.
23  Wahlfeld temporary custody of JW, with shared residential time for Ms. Wahlfeld. Dkt. No. 28 at
24  9–10; Dkt. No. 53 at 27. The order precluded Ms. Wahlfeld from removing JW from the state and

1  from contacting Mr. Wahlfeld except in emergencies or as necessary to exchange the child. *Id.* at
2  25, 28. Ms. Wahlfeld initiated this matter on November 18, 2024. Dkt. No. 1.

3  **A.      Legal Standards**

4  Federal Rule of Civil Procedure 65 empowers the court to issue a TRO. Fed. R. Civ. P.
5  65(b). Like a preliminary injunction, a TRO is "an extraordinary remedy never awarded as of
6  right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *see Washington v. Trump*,
7  847 F.3d 1151, 1159 n.3 (9th Cir. 2017) (the standards applicable to TROs and preliminary
8  injunctions are "substantially identical"). The Court will not "mechanically" grant an injunction
9  for every violation of law. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982). Instead,
10 plaintiffs seeking a TRO must establish that (1) they are "likely to succeed on the merits," (2) they
11 are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "the balance of
12 equities tips in [their] favor," and (4) "an injunction is in the public interest." *Winter*, 555 U.S. at
13 20. The "possibility" of irreparable harm is insufficient; the moving party must "demonstrate that
14 irreparable injury is *likely* in the absence of an injunction." *Id.* at 22.

15 The Ninth Circuit employs a "sliding scale" approach, under which the four elements are
16 balanced "so that a stronger showing of one element may offset a weaker showing of another."
17 *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). For example, "serious
18 questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can
19 support issuance of a [TRO], so long as the plaintiff also shows that there is a likelihood of
20 irreparable injury and that the injunction is in the public interest." *Id.* at 1135 (internal quotation
21 marks omitted). The moving party bears the burden of persuasion and must make a clear showing
22 that it is entitled to such relief. *Juarez v. Asher*, 556 F. Supp. 3d 1181, 1187 (W.D. Wash. 2021)
23 (citing *Winter*, 555 U.S. at 22).

24

B.  **The Court Grants the Requested TRO in Part**

The Hague Convention, which is "designed to discourage child abduction" and forum shopping in custody disputes, provides for the return of children "wrongfully removed or retained" from their country of "habitual residence." *See Lozano v. Montoya Alvarez*, 572 U.S. 1, 16 (2014); Convention, art. 12. "When faced with a petition for return of a child under the Hague Convention, the courts of signatory nations may only determine the merits of the abduction claim; the merits of the underlying custody claim are not to be considered." *Robert v. Tesson*, 507 F.3d 981, 988 (6th Cir. 2007). In addition, "[t]he Convention's return requirement is a 'provisional' remedy that fixes the forum for custody proceedings[.]" *Monasky v. Taglieri*, 589 U.S. 68, 72 (2020). "In short, the Hague Convention is designed to put all participants in a custody dispute back into the positions they would have been in but for one parent's wrongful removal of the child. It is not, and was never meant to be, a vehicle for determining custody rights." *Carrascosa v. McGuire*, 520 F.3d 249, 260 (3d Cir. 2008).

To establish a prima facie case for the return of a child, the petitioner must demonstrate by a preponderance of the evidence that: (1) the child at issue is under the age of sixteen; (2) the child had a "habitual residence" in a foreign country that is a signatory to the Convention; (3) the child was removed or retained in breach of the petitioner's custody rights under the law of the country of habitual residence; and (4) the petitioner was exercising those rights at the time of the child's wrongful removal or retention. *Rivera Gabriel v. Lavison*, 2:22-cv-00006-TL, 2022 WL 952195, at *4 (W.D. Wash. March 30, 2022) (citing 22 U.S.C. § 9003). JW was born in 2019 and is approximately five years old. Dkt. No. 28 at 3. Both the United States and Germany are signatory nations to the Hague Convention.[2]

---

[2] *See* https://travel.state.gov/content/travel/en/International-Parental-Child-Abduction/abductions/hague-abduction-country-list.html (last visited January 24, 2025).

ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER - 4

The location of a child's habitual residence "depends on the specific circumstances of the particular case." *Monasky*, 589 U.S. at 78. Here, the parties agree that Germany is JW's habitual residence. Dkt. No. 62 at 1–2.

Ms. Wahlfeld also alleges that JW has been wrongfully retained in the United States in violation of the parties' German settlement agreement, which granted Ms. Wahlfeld custody of JW. Dkt. No. 51 at 10; *see also* Dkt. No. 28 at 4; Dkt. No. 52 at 16–17. Mr. Wahlfeld does not dispute that the parties' settlement agreement granted Ms. Wahlfeld such custody. However, he argues that he has not wrongfully retained JW; instead, "JW cannot leave Washington State because a King County Washington Domestic Violence Court placed a travel restriction on JW." Dkt. No. 23 at 1; *see also* Dkt. No. 59 at 1 ("J.W. is in legal hold in Washington State by the Order of King County Judge because [Ms. Wahlfeld] was arrested for domestic violence assault."). Thus, he argues, he has "done nothing wrong." Dkt. No. 56 at 1. True enough, a King County Superior Court order precludes Ms. Wahlfeld from removing JW from the state, Dkt. No. 53 at 28, but the Hague Convention's wrongful retention standard does not require wrongful intent. Rather, the removal or the retention of a child is considered wrongful where

> a) it is in breach of rights of custody attributed to a person, an institution or any other body, either jointly or alone, under the law of the State in which the child was habitually resident immediately before the removal or retention; and
>
> b) at the time of removal or retention those rights were actually exercised, either jointly or alone, or would have been so exercised but for the removal or retention.

Convention, art. 3; *see also Monasky*, 589 U.S. at 72 (2020) (explaining that "retention is wrongful if done in violation of the custody laws of the child's habitual residence"); *Abbott v. Abbott*, 560 U.S. 1, 9 (2010) ("A removal is wrongful where the child was removed in violation of rights of custody") (cleaned up). Under the convention, "rights of custody" include "rights relating to the

care of the person of the child and, in particular, the right to determine the child's place of residence." *Id.* at 9 (quoting Hague Convention, Art. 5(a)).

Courts consult the law of the child's habitual residence to determine the scope of the parents' custody rights. *Abbott*, 560 U.S. at 9. Ms. Wahlfeld argues, and Mr. Wahlfeld does not dispute, that Ms. Wahlfeld has custody rights under German law. Dkt. No. 28 at 12 (noting that German Civil Code . . . , Sec. 1626, provides that parents who are married to one another have joint parental custody."). Specifically, prior to the alleged unlawful retention starting in March 2024, Ms. Wahlfeld had custody rights under the settlement agreement and German law, and she was exercising her rights by having physical custody of JW, living with him, caring for him, and fully participating in his life. Dkt. No. 28 at 10, 12–13. Now, Mr. Wahlfeld has temporary custody and Ms. Wahlfeld has only shared residential time. Dkt. No. 53 at 27.

Federal courts do not give preclusive effect to state court custody determinations that did not arise in the context of an ICARA claim, *Holder v. Holder*, 305 F.3d 854, 866 (9th Cir. 2002), so Mr. Wahlfeld's retention of JW could be wrongful under the Convention even if it is in compliance with a state custody order. Indeed, federal district courts have the authority to vacate state custodial decrees that violate the Hague Convention. *Doe v. Mann*, 415 F.3d 1038, 1044 (9th Cir. 2005). Mr. Wahlfeld has retained JW in Washington even though the parties have what appears to be a binding settlement agreement that grants Ms. Wahlfeld custody rights. Dkt. No. 51 at 10–11. Ms. Wahlfeld further argues that she would have exercised her custody rights and returned with JW to his habitual residence in Germany if Mr. Wahlfeld had not retained the child. Dkt. No. 28 at 13; Dkt. No. 51 at 11. Under these circumstances, Ms. Wahlfeld has shown a likelihood of success on the merits.

In addition, Ms. Wahlfeld has alleged immediate and irreparable harm arising from Mr. Wahlfeld's retention of JW in Washington away from his habitual residence in Germany and in

1 | violation of her lawful custody rights. Dkt. No. 51 at 11–12. She asserts that wrongful retention of
2 | the child in this jurisdiction could harm JW, who has friends and extended family in Germany,
3 | receives special needs services there, and "is fully involved and integrated in all aspects of daily
4 | and cultural life in Germany." Dkt. No. 28 at 6. That such continuing harm may require preliminary
5 | relief has been recognized by Congress, which authorized courts to "take or cause to be taken
6 | measures under Federal or State law, as appropriate, to protect the well-being of the child involved
7 | or to prevent the child's further removal or concealment before the final disposition of the
8 | petition." 22 U.S.C. § 9004(a). Congress has also explicitly found that "[t]he international
9 | abduction or wrongful retention of children is harmful to their well-being." 22 U.S.C. § 9001(a)(1).
10 | Ms. Wahlfeld has also shown that there is some risk that Mr. Wahlfeld will leave the jurisdiction
11 | with JW in light of the fact that he appears to have attempted to evade service in this matter, Dkt.
12 | Nos. 31–32, 36, and he previously threatened to abduct JW and bring him to the United States,
13 | Dkt. No. 28 at 4–5. *See also Soberano v. Guillen*, No. C21-1084-RSM, 2021 WL 4804605, at *5
14 | (W.D. Wash. Oct. 14, 2021) (noting that even though there was no evidence that the respondent
15 | was planning to imminently flee the jurisdiction, evasion of service and other factors increased the
16 | possibility that respondent might flee to avoid legal resolution of the matter). Ms. Wahlfeld has
17 | thus established a likelihood of irreparable harm absent injunctive relief.

18 |     For the same reasons, the Court also concludes that the balance of the equities and the
19 | public interest support Ms. Wahlfeld's request for a TRO. The record indicates that Mr. Wahlfeld
20 | has wrongfully retained JW in violation of Ms. Wahlfeld's custody rights. Conversely, the nature
21 | of the relief sought is unlikely to harm him because he states that he "does not have any intention
22 | of leaving the US any time soon" and has not indicated a need to leave this district with JW. Dkt.
23 | No. 60 at 1. While there are exceptions under which the Court need not order return of a child, *see*
24 |

ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER - 7

*Gaudin v. Remis*, 415 F.3d 1028, 1034–35 (9th Cir. 2005), Mr. Wahlfeld does not argue that any of those exceptions apply here.

Finally, Ms. Wahlfeld requests an order precluding Mr. Wahlfeld from contacting her except through her counsel. Dkt. No. 51 at 16. She has not shown that she will suffer irreparable harm absent this relief. She provides two emails Mr. Wahlfeld sent her, one regarding the family dog and the other to coordinate dropping off JW. Dkt. No. 52 at 25–28. Neither communication is threatening or otherwise inappropriate. Moreover, Ms. Wahlfeld unsuccessfully sought her own domestic violence protection order in state court. Dkt. No. 28 at 10. Under these circumstances, Ms. Wahlfeld has not demonstrated that she is likely to suffer irreparable harm absent an order precluding Mr. Wahlfeld from contacting her directly.

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Ms. Wahlfeld's motion for a temporary restraining order, Dkt. No. 51, and orders as follows:

1. The Court denies as moot Ms. Wahlfeld's request to require Mr. Wahlfeld to surrender JW's passports and birth certificates to the Clerk of the Court;

2. The Court denies Ms. Wahlfeld's request to prohibit Mr. Wahlfeld from communicating with her except through her counsel;

3. Pursuant to good cause shown under Federal Rule of Civil Procedure 65(b)(2) as described above, Mr. Wahlfeld is prohibited from removing JW from the Western District of Washington until further order of this Court;

4. Ms. Wahlfeld is not required to post a bond or security for this Order due to the nature of the conduct temporarily enjoined and the fact that Mr. Wahlfeld is unlikely to suffer any costs or damages in the event the Court determines that he was wrongfully restrained;[3] and

---

[3] *See, e.g.*, *Jorgensen v. Cassiday*, 320 F.3d 906, 919–20 (9th Cir. 2003); *Soberano*, 2021 WL 4804605, at *7.

5. Pursuant to the parties' joint status report, Dkt. No. 62, the Court sets the following briefing schedule for the parties' cross motions for summary judgment: Ms. Wahlfeld's combined opposition to Mr. Wahlfeld's motion for summary judgment[4] and cross-motion for summary judgment and an order of return pursuant to 22 U.S.C. § 9003 is due on February 14, 2025 and shall not exceed shall not exceed 8,400 words. Mr. Wahlfeld's combined reply and opposition brief is due on February 28, 2025 and shall not exceed 8,400 words. Ms. Wahlfeld's reply is due on March 3, 2025 and shall not exceed 4,200 words. If warranted, the Court will set a date for an evidentiary hearing once briefing is complete. Other than as set forth in this order, the parties shall not file additional motions to dismiss or for summary judgment.

Dated this 24th day of January, 2025.

Lauren King
United States District Judge

---

[4] If Mr. Wahlfeld intended his Motion for Summary Judgment, Dkt. No. 58, to be only a motion for partial summary judgment, he can withdraw that motion by filing a Notice to Withdraw Pending Motion under Local Civil 7(l) and file a motion for summary judgment no later than January 31, 2025. In submitting argument to the Court, Mr. Wahlfeld must abide by the Local Civil Rules, this Court's orders, and other applicable law governing motions and the case schedule; he must not submit unauthorized filings to the Court such as his procedurally improper Response to Joint Status Review. Dkt. No. 65; *see also* Dkt. No. 50 (the Court ordering that "[i]f the parties cannot agree to all parts of the joint status report, they may include their positions in separate paragraphs but shall not file separate submissions").

ORDER GRANTING IN PART MOTION FOR TEMPORARY RESTRAINING ORDER - 9